AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| KODY GRASSI | ) | Case No.   4:20-mj-71222-MAG |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

**FILED**

Aug 27 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 11, 2019 _____ in the county of _____ Alameda _____ in the _____ Northern _____ District of _____ California _____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(C) | Possession with intent to distribute Adderall, an amphetamine and Schedule II controlled substance.<br><br>Maximum penalties: 20 years' prison, lifetime supervised release (minimum 3 years), $1,000,000 fine, $100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit of DEA Special Agent Matthew Monschein.

☑ Continued on the attached sheet.

Approved as to form _____  /s/ Alexis Loeb
                AUSA    Alexis Loeb

Sworn to before me by telephone.

Date: _____ 08/27/2020 _____

City and state: _____ Arcata, CA _____

/s/ Matthew Monschein
*Complainant's signature*

Special Agent Matthew Monschein
*Printed name and title*

*Judge's signature*

Hon. Robert M. Illman, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Matthew Monschein, a Special Agent with the Drug Enforcement Administration ("DEA"), currently assigned to the San Francisco Division Office, in San Francisco, California, being duly sworn, depose and state:

## I.      INTRODUCTION AND PURPOSE OF APPLICATION

1.      This affidavit is being submitted in support of a criminal complaint and arrest warrant charging KODY GRASSI ("GRASSI") with possession with intent to distribute Adderall, an amphetamine and Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

2.      My statements in this affidavit are based on my own training and experience; knowledge of the facts and circumstances obtained through my review of evidence related to this investigation; information provided by other agents and law enforcement officers; information provided by reports prepared by other agents and law enforcement officers; and information provided by records and databases.

3.      This affidavit is submitted for the limited purpose of establishing probable cause in support of a complaint and does not set forth each and every fact that I, or others, have learned during the course of the investigation. Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted.  Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed.  This affidavit also reflects my current understanding of facts relating to this investigation, and may evolve as I learn additional information.

## II.     AFFIANT BACKGROUND

4.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States

who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

5.      I am employed by the United States Department of Justice, DEA, as a Special Agent and have been so employed since September 2016.

6.      I received 20 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from September 2016 to February 2017.  The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, financial investigations, money laundering techniques, and the general operation of drug trafficking organizations.  This training included instruction in the investigation of federal drug violations, including, but not limited to Title 21, United States Code, Sections 841 and 846.  Additionally, this training included several hundred hours of comprehensive, formalized instruction in, but not limited to, narcotics investigations, drug identification, detection, interdiction, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.

7.      Prior to my employment with the DEA, I was employed with the Federal Protective Service for two years, Department of Defense for two years and United States Navy for six years.

8.      During the course of my employment as a DEA Special Agent, I have participated in many narcotics investigations either as a case agent or in a supporting role.  I have debriefed confidential sources and witnesses who had personal knowledge regarding narcotics trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by narcotics traffickers.  I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, physical surveillance, and assisted in court

AFF. IN SUPPORT OF CRIMINAL COMP.

ordered wiretap investigations.  Moreover, I have executed numerous federal and state narcotics search and arrest warrants that resulted in the arrest of suspects and seizure of narcotics.

9.      Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with narcotics traffickers' use of mobile telephones and mobile telephone applications and their use of numerical codes and code words to conduct their business.  Also, I have become familiar with narcotics traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of narcotics, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

10.     I have initiated and/or participated in approximately five Organized Crime Drug Enforcement Task Force ("OCDETF") investigations.  The OCDETF program is part of the United States Attorney General's strategy to reduce the availability of drugs by disrupting major trafficking organizations through joint collaborations across agencies.

## III.    APPLICABLE LAW

11.     Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(c), in relevant part, prohibit a person from knowingly possessing a controlled substance with the intent to distribute it to another person.

## IV.    FACTS ESTABLISHING PROBABLE CAUSE

12.     On June 11, 2019, federal agents executed a search warrant at a residence on Georgia Street in Oakland.  According to the California Department of Motor Vehicles, this residence is GRASSI's mailing address.

13.     GRASSI came to the front door as agents gave the knock-and-notice warning.  He acknowledged his identity.  He was the occupant of the top floor of the residence and indicated that he shared the space with his significant other, who was at work.

14.     While searching GRASSI's bedroom on the top floor, agents found a bag of suspected Adderall:

AFF. IN SUPPORT OF CRIMINAL COMP.



15.     Agents spoke with GRASSI the same day.   GRASSI admitted he was in possession of Adderall and MDMA.  GRASSI also admitted he sold smaller quantities of cocaine and had approximately 40 grams of cocaine in his closet, which agents located.

16.     Agents also found four digital scales in GRASSI's bedroom.  In the same room, they also found about $2,000 in loose currency near a money counter, which GRASSI admitted were the proceeds of selling drugs.

17.     Based on my training and experience, I know that digital scales and money counters are commonly used by individuals who distribute narcotics.  I also know that possession of multiple types of drugs can indicate that an individual is involved in drug distribution, and does not merely possess the drugs for personal use.

18.     GRASSI's cell phone includes a June 7, 2019 text message exchange where, in

AFF. IN SUPPORT OF CRIMINAL COMP.

response to a message asking about the price for 60 "addy," GRASSI replied that it would cost the sender $6/each.

19.     Agents interviewed GRASSI again on November 20, 2019.  GRASSI told agents that he paid $5-$6 per pill for the Adderall.  He first denied selling the Adderall, but then admitted that he did sell Adderall, charging $1 more than what he paid.

## V.    CONCLUSION

20.     Based on the foregoing evidence, there is probable cause to believe that, on or about June 11, 2019, in the Northern District of California, Kody GRASSI knowingly possessed Adderall, an amphetamine and Schedule II controlled substance, with the intent to distribute it , in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(C).  Therefore, I respectfully request that the Court issue a criminal complaint and arrest warrant for Kody GRASSI.

I swear under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

_____/s/ Matthew Monschein_____
SPECIAL AGENT MATTHEW MONSCHEIN
Drug Enforcement Administration

Sworn to me over telephone and signed by me this _27_ day of August, 2020:

_____
HONORABLE ~~KANDIS~~ ~~WESTMORE~~
United States Magistrate Judge  Robert M. Illman

AFF. IN SUPPORT OF CRIMINAL COMP.